# ZETTLER HOSTILO & REGISTER

Christie Register
Attorney at Law

**Savannah Office**
1515 Abercorn Street
Savannah, Georgia 31401
Tel: (912) 234-4473
Fax: (912) 234-3972

**Statesboro Office**
17 Courtland Street
Statesboro, Georgia 30458
Tel: (912) 764-6757
Fax: (912) 764-6756

Please reply to Savannah Office.

February 2, 2007

Honorable Judge Lamar W. Davis
United States Bankruptcy Court
125 Bull Street
Savannah, GA 31401

Re: Adam Gnall v. David Ashton McLain and Sharon Patricia McLain
Adverdary Proceeding No. 06-04047-LWD
David Ashton McLain and Sharon Patricia McLain, *Debtosr*
Chapter 7 Case No. 05-43382-LWD

*Letter Brief*

Dear Judge Davis:

Please accept this letter brief on behalf of Debtors/Defendants David Ashton McLain and Sharon Patricia McLain. Prior to filing their Chapter 7 Petition, Debtors rented a house from Plaintiff Gnall. Plaintiff Gnall alleges that damage was intentionally done to his property by the McLains and that this debt should be excepted from discharge.

The code section at issue here is 11 U.S.C. § 523 (a)(6) which provides that a debt for *willful and malicious injury* by the debtor to another is not dischargeable. The U.S. Supreme Court addressed this code section in 1998 in the case Kawaauhau v. Geiger, 523 U.S. 57 (1998). The Court held that even acts of *recklessness* did not fall within the willful and malicious injury exception to discharge. This case involved medical malpractice, but the Court's interpretation of this code section still applies to this case. The Court agreed that the words used in Section 523(a)(6) require that only acts done with the *actual intent to cause injury* fall within the exception's scope.

Clearly, the photos of the property that were put into evidence by the Plaintiff raise a concern. Walls were painted with colors that most would find undesirable, and there was various damage including a cabinet door in the kitchen that had broken off the hinges and objects in the commodes. While these were issues that had to be addressed by Mr. Gnall, there is no evidence to show that these acts were done *with the intention of deliberately harming* the property or its owner. According to Kawaauhau v. Geiger, the McLains' intentional act of painting the walls with terrible colors is not enough to show malice; the evidence must show that they did this with the intention of harming Mr. Gnall's property.

The evidence showed that the McLains lived in Mr. Gnall's house for approximately four years. Five children, including toddlers and a teenager, lived in the house as well. As they paid Mr. Gnall a pet deposit, Mr. Gnall was aware that the McLains had a dog. Much of the damage complained of included normal wear and tear such as stains on the carpet and damage to cheap blinds. Much of the damage complained of has no relation whatsoever to anything the McLains could have done. Examples of this include the water damage from the evaporator and water damage on the roof. Mr. Gnall was clearly overreaching when he submitted the expenses for all of the repairs to this Court. He wants to be paid for the expenses he incurred while preparing the house to be sold. Given the way that Mr. Gnall submitted the damages as one lump sum, to redact the costs of the items of normal wear and tear and the items that were not caused by the McLains would require guessing and speculation.

Mr. Gnall's complaints about the McLains ranged from stains on the carpet to broken door hinges to water damage on the roof. Mr. Gnall's repairman, Mr. Gossett, testified that some of the items included in his itemization were not caused by any conduct of the McLains, yet Mr. Gnall alleges that the McLains should reimburse him for *every* expense he incurred. Examples of these expenses include replacing inexpensive blinds with costly blinds and rerouting the dryer vent.

The testimony from all witnesses suggests that the McLains tried to repair some of the items that were damaged. For example, the cabinet door that was broken had been repaired. The McLains called RotoRooter at their own expense because one of their children had placed an object into the commode. This clearly shows that they did not act with *malice*; their trying to make it better shows that they had *good* intentions and did not intentionally injure anything.

The McLains painted two of the bedrooms and admittedly did not do a good job while repainting the rooms. Many of us would not have chosen the colors that they did, but unusual taste or even bad taste in colors does not demonstrate malice. The photos showed that the McLains had begun repainting the room before they moved but did not complete it. Mrs. McLain testified that when they were vacating the house, she was ill and that Mr. McLain was working a lot, sometimes 80 hours per week, and for these reasons, they were not able to repaint the house as they had hoped. Their good intentions of repainting the rooms, trying to repair commodes, and repairing the cabinet door shows that they did not *intentionally* harm this house. These damages occurred but not because the McLains willfully intended to cause harm to the property.

The cases addressing this issue are split. There is a case out of the Middle District of Florida which is nearly identical to the instant case. *In re Naranjo*, 349 B.R. 304 (Bkrtcy. M.D. Fla., 2006). This case included evidence of holes in the walls, damage to the HVAC, removal of the front storm door, stripping of the hardwood floors, and the destruction of light fixtures by a tenant. The court in *Naranjo* found that while the condition of the house showed damage, the landlord did not show the requisite *intent* and held that the debt was dischargeable.

Debtors, in general, are entitled to a fresh start when filing under Chapter 7. Based on the Supreme Court's opinion in Kawaauhau v. Geiger, I submit to the Court that none of the McLains acts support a finding of malice. Laziness does not show malice and neither does being bad housekeepers and bad painters. If *recklessness* does not show malice, then laziness, sloppiness, and carelessness do not either.

The bottom line is that Mr. Gnall feels that the McLains owe him some money, and while this may be true, the McLains also owe money to their other creditors just like all other debtors. This is an unfortunate situation for everyone involved, but Mr. Gnall should not be protected any more than the other creditors involved in the McLain's case.   Thank you for your consideration.

Sincerely,

Christie Register
Attorney for Debtors